Thomas K. Egbert and another *vs.* Daniel K. Baker and another. John D. Martin and others *v.* The Same. John D. Stout and others *v.* The Same. Stephen Underhill *v.* The Same.

New Haven & Fairfield Cos., Oct. T., 1889. Andrews, C. J., Carpenter, Loomis, J. M. Hall and Thayer, Js.

A common law assignment made by a debtor in another state, good by the laws of that state, will convey to the assignee debts due the assignor from persons residing in this state, who are notified of the assignment.

It does not affect the case that the assignment was made to a trustee for the benefit of certain preferred creditors, and that it would not have been valid if made in this state.

[Argued October 31st, 1889—decided February 7th, 1890.]

Four factorizing suits against the defendants, Daniel K. Baker and Charles A. Clark, partners under the name of Baker & Clark, served upon numerous garnishees as debtors of the firm; brought to the Superior Court in Fairfield County. One of the defendants resided, at the time the suit was brought, in the state of New York, and the other in the state of New Jersey. The plaintiffs in all the suits resided at that time out of this state. The defendants appeared only for the purpose of pleading to the jurisdiction, as no service was made on them, and the court acquired jurisdiction, if at all, only by the attachment of the debts due from the garnishees. Before the suits were brought the defendants had made an assignment of all their property, including the debts in question, to a trustee for certain preferred creditors, and notice of the assignment had been given to the debtors. The cases were heard together upon the pleas to the jurisdiction before *Phelps, J.* The facts were found, the pleas sustained, and the cases dismissed. The plaintiffs in all the cases appealed to this court and the cases were argued here together. The facts are fully stated in the opinion.

*S. Tweedy*, for the appellants.

1. The situs of the debts attached in this case is to be regarded as in this state, at the domicil of the debtor. "The exceptions to the maxim, *mobilia sequentur personam*, have become so numerous that it cannot safely be invoked for the decision of any but the simplest cases of the present day." Story's Confl. of Laws, 8th ed., § 383, note *a*. For some purposes, such for instance as administration, personal property has a *situs* at the place where it actually is, and in such cases at least debts have a *situs*, and are to be regarded as assets at the domicil of the debtor. *Holcomb* v. *Phelps*, 16 Conn., 127; *Moore* v. *Bonnell*, 31 N. Jer. Law, 90. So for the purposes of taxation. *Graham* v. *First Nat. Bank*, 84 N. York, 393, 401. Other well recognized exceptions are found in cases of involuntary or statutory assignments, and proceedings under foreign bankrupt or insolvent laws. Story's Confl. of Laws, 8th ed., § 383, note *a ; Upton* v. *Hubbard*, 28 Conn., 274; *Paine* v. *Lester*, 44 id., 196; *Taylor* v. *Columbian Ins. Co.*, 14 Allen, 353; *Willits* v. *Waite*, 25 N. York, 577. A careful examination of the many cases supporting this particular exception, conclusively shows that, in the application of it, the courts have recognized no such distinction, and have applied the rule of the *lex situs* to debts and movables alike. Another important, and in these cases a controlling exception to the general rule is, that the *lex situs* prevails when the foreign assignment in question is repugnant to the law and policy of the *lex fori*. "It is, however, a necessary exception to the universality of the rule, that no people are bound or ought to enforce or hold valid, in their courts of justice, any contract which is injurious to their public rights, or offends their morals, or contravenes their policy, or violates a public law." 2 Kent's Com., 13th ed., 458; Wharton's Confl. of Laws, § 390 *a ;* Burrill on Assignments, § 306; *Warner* v. *Jaffrey*, 96 N. York, 248; *Ingraham* v. *Geyer*, 13 Mass., 146; *Fall River Iron Works* v. *Croade*, 15 Pick., 11; *Zipcey* v. *Thompson*, 1 Gray, 243; *Boyd* v. *Rockport Steam Cotton Mills*, 7 id., 406; *May* v. *Wannemacher*, 111 Mass., 202; *Pierce* v. *O'Brien*,

129 id., 314; *Faulkner* v. *Hyman*, 142 id., 53; *Philson* v. *Barnes*, 50 Penn. St., 230; *Varnum* v. *Camp*, 13 N. Jer. Law, 326; *Moore* v. *Bonnell*, 31 id., 90; *Sheldon* v. *Blanvelt*, 29 So. Car., 453; *Atwood* v. *Protection Ins. Co.*, 14 Conn., 555. The cases at bar are clearly within this exception, for this assignment in trust for the benefit of creditors, made by insolvents with a view to insolvency, and creating large preferences, is in direct contravention of the positive law and the well-settled policy of this state. It would have been void if made in this state. Whether such an assignment be a voluntary, involuntary, common law or statutory one, is not deemed important, and the courts, in cases falling within this last exception, apply the rule of *lex situs* to debts and movables alike, in aid of attaching creditors of non-resident assignors. Story's Confl. of Laws, 8th ed., § 383, note *a;* Burrill on Assignments, § 306; *Green* v. *Van Buskirk*, 5 Wall., 307, and 7 Wall., 139; *Hervey* v. *R. Isl. Locomotive Works*, 93 U. S. R., 664; *Fox* v. *Adams*, 5 Greenl., 245; *Felch* v. *Bugbee*, 48 Maine, 9; *Borden* v. *Sumner*, 4 Pick., 265; *Blake* v. *Williams*, 6 id., 286; *Rhawn* v. *Pearce*, 110 Ill., 350; *Frazier* v. *Fredericks*, 24 N. Jer. Law, 162; *Mayberry* v. *Shisler*, 1 Harr. (Del.,) 349; *Richmondville Mfg. Co.* v. *Prall*, 9 Conn., 487; *Paine* v. *Lester*, 44 id., 196; *Crouse* v. *Phœnix Ins. Co.*, 56 id., 176.

2. It makes no difference that the plaintiffs are not citizens of this state. In *Paine* v. *Lester, supra*, this court says (p. 203:) "This comity they are prepared to extend when there is no reason to the contrary, especially if there is no interest of our own citizens, or of the citizens of a sister state, who are seeking to avail themselves of the protection of these laws, to be injuriously affected by such recognition." And again (p. 204:) "The citizens of all our sister states have, by the constitution of the United States, the same privileges with our own citizens, and any one of them who has availed himself of the legal remedies furnished by our laws to secure payment of a debt due him, has the same claim to the assistance of our own courts that one of our own citizens would have." In Burrill on Assignments, 5th

ed., § 310, note 1, it is said:—"But in *Paine* v. *Lester*, 44 Conn., 196, the court would abolish all distinctions between citizens of Connecticut and citizens of other states." But the state does not stand alone on this question. The same doctrine is held in the Supreme Court of the United States and in many of the state courts.

3. The fact that there are in New York certain statutory regulations which apply to assignments of this character, and in conformity with which this assignment was executed, may be of some importance in the determination of these cases. It cannot be claimed that this assignment was made under any insolvent law; the finding negatives any such claim; but it does not necessarily negative the claim that this is a statutory assignment. The making of an assignment under our insolvent laws is an " exercise of the right at common law to assign and transfer property." *Hawkins's Appeal from Probate*, 34 Conn., 548. It will hardly be claimed that such an assignment is not a statutory one. But these New York statutes have so materially limited and restricted the common law right, as it existed prior to the General Assignment act, that when we consider those limitations and restrictions, the nature and extent of the methods of the administration of the estate assigned, the conditions, penalties and preferences imposed, and the fees prescribed, all statutory, it is difficult to view this assignment as a common law one, at least to the extent claimed by the defendants. *Hardman* v. *Bowen*, 39 N. York, 196; *In re Morgan*, 99 id., 145; *Richardson* v. *Thurber*, 104 id., 606.

*G. Stoddard* and *W. T. Haviland*, for the appellees.

CARPENTER, J. These are four cases against the same defendants. One of the defendants resides in the state of New York and the other in New Jersey. The plaintiffs in two of the cases reside in New York, and in the other two in New Jersey. In each case suit is brought in this state by process of foreign attachment. Property otherwise is not attached and no personal service was made on the defendants.

In each case there is an appearance for the defendants for the sole purpose of pleading in abatement to the jurisdiction. The Superior Court found the allegations of the plea true and abated the suit. The plaintiffs in each case appealed, and precisely the same question is raised in all.

The sole question is—whether the debts due originally from the garnishees to the defendants were due to them when the suits were brought or to their assignee.

It appears that before the suits were brought the several debts had been assigned in a general assignment of all the property of the defendants, to one Clarence F. Birdseye, in trust for the benefit of certain preferred creditors, and notice given to the debtors of the assignors who are now garnishees. The assignment was not made by operation of law in bankruptcy or insolvent proceedings, but was a voluntary assignment at common law. It is conceded that if the assignment operated to transfer the several debts, the judgment is right; if not, that it is erroneous and must be reversed.

It is a general principle that debts have no situs. For purposes of administration and attachment in cases of foreign creditors, and possibly for some other, they are regarded as located where the debtor resides. But for most purposes, especially for the purposes of assignment by the creditor, they follow the residence of the creditor. No claim is made that these debts could only be assigned according to the requirements of our law.

Another general principle is, that an assignment or other contract good in the place where made is good everywhere. These principles are conceded. It must also be conceded that they determine this case, unless for some reason it can be regarded as an exception. It is suggested, although not very strenuously urged, that we ought to regard the facts of this case as showing that the assignment was in reality, although not made under any insolvent law, statutory, and as such within the principle of those cases in which this court has held that insolvency proceedings under the laws of other states do not affect debts due from our citizens to the insol-

vent.　*Upton* v. *Hubbard*, 28 Conn., 274; *Paine* v. *Lester*, 44 Conn., 196.

We think this is not a statutory proceeding in the sense claimed by the plaintiffs.　We do not understand that the assignment act of New York attempts to deal with the nature and effect of the assignment, but simply prescribes the duties of the assignor and regulates the mode of administering the trust.　It is in no sense an insolvency proceeding prescribed by statute, but is a proceeding instituted by the assignor for the benefit of such persons only as he may please to name.

The finding is that " the said assignment and transfer * * * was not made under nor in pursuance of any bankrupt or insolvent law of the state of New York, and was an exercise by the defendants of their right at common law to assign and transfer their property."　This is explicit, and leaves no room for construction.　There is absolutely no ground for saying that it is an insolvency proceeding, and not an exercise of a common law right.　We must therefore have reference to the distinction between the assignment in this case and those made in the course of insolvency or bankruptcy proceedings.　That distinction is clearly recognized in *Upton* v. *Hubbard* and *Paine* v. *Lester*, *supra*.　Also in *Crouse* v. *Phœnix Ins. Co.*, 56 Conn., 176.

That distinction is substantial and real.　In *Upton* v. *Hubbard* the court was asked to give effect to the insolvent law of Massachusetts in this state ; but the court declined to do so, deciding in favor of the attaching creditor.　*Paine* v. *Lester* turned upon the very distinction now under consideration.　Even in that case PARK, C. J., thought that the assignment ought to have been held valid.　In *Crouse* v. *Phœnix Ins. Co.* this court gave effect to the insolvency proceedings in the state of New York so far as it affected a debt due from the insurance company to a citizen of New York, mainly on the ground that the company by virtue of its compliance with the provisions of a law of that state, had in law become also a citizen of that state, and as such had been sued there and had been compelled to pay the debt to the assignee.　Surely that case cannot be regarded as an

authority for denying the validity of the assignment in this case.

By giving effect to a common law conveyance made by the party we do not import into this state the local statute law of another state, but simply give effect to a principle of law of general application in all the states, as we believe; in this state as well as in New York. The principle is too firmly established and too important to be departed from or shaken. A departure by one state even would introduce great confusion and seriously affect the commercial interests of the country.

But we are asked to make an exception to the rule on the ground that the assignment giving a preference to creditors contravenes the policy of our insolvent law, which forbids preferences and seeks to divide the assets ratably among creditors. In a legal sense it cannot be said that a contract, made in the state of New York, in strict conformity to the laws of that state, and by citizens of that or other states, contravenes the policy of our law. Our statute was not enacted for such contracts and takes no cognizance of them. Such contracts may dispose of property in a manner not allowed by our law ; but that does not concern us ; and is certainly not a sufficient reason for giving our statute an extra-territorial jurisdiction, especially in a case between citizens of other states, the effect of which would be to deprive parties of vested rights.

This contract affects neither citizens of this state nor property in the state. The garnishees have no interest in this question, and, for the purposes of this case, the debts owing by them have no situs in this state. Comity certainly does not require us to avoid this contract, for it is not a case for the application of that principle. If it was a mere question, not of right, but of policy, whether we would allow a foreign administrator or other officer deriving authority from foreign laws to sue, as such, in our courts, we might well exercise a discretion and allow it in proper cases; but when we are asked to go further and arbitrarily deprive parties of

rights acquired under valid contracts, we must see stronger reasons for it than any existing in this case.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.